IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CYNTHIA K. FIELDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:20-CV-0356-D |
| VS. | § | |
| | § | |
| WAL-MART STORES, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Cynthia K. Fields ("Fields") sues defendants Wal-Mart Stores, Inc. and Wal-Mart Stores Texas, LLC (collectively, "Walmart"), alleging that her employment was terminated based on a disability and her African-American race, in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Walmart moves for summary judgment. For the reasons that follow, the court grants the motion and dismisses this action with prejudice by judgment filed today.

I

Fields, who is African-American, worked for Walmart at its Store No. 789 located in Mesquite, Texas for nearly 16½ years, from October 15, 2002 until her termination on March 12, 2019.[1] For most of her tenure she was employed as a cashier. But after the store's Asset

---

[1]In deciding Walmart's motion for summary judgment, the court views the evidence in the light most favorable to Fields as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541

Protection Assistant Store Manager, Larry Hollje ("Hollje"), asked her to become a self-checkout host, she moved to that position in May 2018. The self-checkout area might be referred to colloquially as the "self-service line," where customers scan and pay for their purchases themselves. As a self-checkout host, Fields was responsible for properly handling claims and returns, zoning the area, arranging and organizing merchandise and supplies, identifying shrink and damages, ensuring a safe work environment, and using the cash register and completing customers' sales in a timely manner.

On March 12, 2019[2] Fields's employment was terminated for "Gross Misconduct." Ds. App. 27. Walmart maintains that Fields's inattentiveness on the job allowed two customers (hereafter referred to as "thieves") to cause Walmart to suffer a loss exceeding $300, and because Fields was an associate who had received relevant training, it was store policy that she be discharged.

According to Walmart,[3] on the day in question, two thieves were able to exit Store No. 789 with a $354.00 vacuum after switching the UPC barcode with a much cheaper product,

---

F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Walmart maintains that the incident in question and Fields's termination occurred on March 18, 2019. Because the court must view the evidence favorably to Fields as the summary judgment nonmovant, and because Fields may be relying on this alleged inconsistency in dates to oppose summary judgment, the court will assume that March 12, 2019 is the correct date.

[3]Although the court does not accept Walmart's version as true, it is necessary, for reasons the court will explain below, to understand the basis for Walmart's asserted legitimate, nondiscriminatory reason for terminating Fields's employment.

using the self-checkout line, and paying only $10.  This was because Fields was not paying attention at the time.  She was observed staring at the jewelry counter instead of paying attention to customers, and, as a result, she did not stop the thieves to check their receipt. Fields was terminated for "Gross Misconduct" because her inattentiveness had caused the store a financial loss exceeding $300, and she had already been trained.  *See* Ds. App. 25, 27. Walmart denies that it acted based on Fields's African-American race in any respect.

Fields disputes Walmart's version of what occurred.  She maintains that the two thieves never went through her self-checkout area, and that they could not have switched the UPC barcode; that she first learned of the theft when an employee announced over a speaker that "somebody had a vacuum cleaner," P. App. 90; that Julio, a Hispanic manager of the Automotive Department, suspected the thieves of shoplifting and followed them from the back of the store to the front; that before Julio could catch up to them, the thieves had already left the store; and that, before the thieves departed, a Caucasian door greeter named Judy attempted to stop them to check their receipt, but the thieves ignored her and left the store with the vacuum.  Fields contends that there are three store employees whose conduct is at issue: Julio, Judy, and Fields.  She posits that she could not have done anything to prevent the theft because the thieves did not pass through her area at all, but that Julio, who initially suspected the customers of theft when he encountered them at the back of the store, and Judy, who was the last line of defense and whose most important job was to check customers' receipts, could have intervened to ask for the customers' receipt. Fields posits that Judy had a greater responsibility because her job description encompassed checking customers'

receipts just before they exited the store; that Julio did not ask the customers to see their receipt; and that Judy attempted to stop the customers, but they ignored her demands and exited the store. Fields contends that Walmart discriminated against her based on her African-American race when it terminated her employment but did not discharge Julio (who is Hispanic) or Judy (who is Caucasian).

After Fields exhausted her administrative remedies with the Equal Employment Opportunity Commission, she filed this lawsuit against Walmart for disability discrimination under the ADA and race discrimination under Title VII. Walmart moves for summary judgment, and Fields opposes the motion.[4]

## II

When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v.*

---

[4]Fields filed her evidence appendix under seal. Because this memorandum opinion and order does not reveal information that should remain sealed, the court has neither filed the memorandum opinion and order under seal nor redacted any part before filing.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet her burden. *Little*, 37 F.3d at 1076; *Barnard v. L-3 Commc'ns Integrated Sys. L.P.*, 2017 WL 3726764, at *3 (N.D. Tex. Aug. 30, 2017) (Fitzwater, J.).

III

The court begins with Walmart's motion for summary judgment on Fields's ADA claim. Walmart contends that it is entitled to summary judgment on this claim because Fields testified that she does not have a disability.

Fields has not responded to Walmart's argument for summary judgment on her ADA claim. Although Fields's failure to respond does not permit the court to enter a "default" summary judgment on this claim, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show

- 5 -

that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2), (3). Because Fields has not responded to Walmart's motion for summary judgment with evidence to support her ADA claim, the court grants the motion as to this claim.

Additionally, Fields's deposition testimony negates any viable claim for disability discrimination. *See* Ds. App. 10-11 (Fields's testimony that she cannot remember any disability that she has and that she had no physical or mental problems that prevented her from doing her job as a self-checkout host).

IV

The court now considers Fields's Title VII race discrimination claim.

A

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). To prevail on her race discrimination claim, Fields must present direct or circumstantial evidence that her race was a motivating factor behind her termination. *See, e.g., Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 648 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004)). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case). "If an inference is required for the evidence to be probative as to [a

defendant's] discriminatory animus in firing [the plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98. "Direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence." *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999) (footnote omitted). Fields does not specifically reference any direct evidence of discrimination in her motion or in her complaint. Thus the court holds that she is relying on circumstantial evidence to prove intentional discrimination.

## B

Because Fields relies on circumstantial evidence to support her race discrimination claim, it is properly analyzed under the *McDonnell Douglas* burden-shifting framework. *See Smith v. City of St. Martinville*, 575 Fed. Appx. 435, 438 (5th Cir. 2014) (per curiam). As modified, the *McDonnell Douglas* framework consists of three stages.

First, Fields must establish a prima facie case of discrimination, which "creates a presumption that [Walmart] unlawfully discriminated against [her]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, Fields must show that (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was replaced by someone outside the protected group or was treated less favorably than were other similarly situated employees who were not members of the protected class under nearly identical circumstances. *Hassen v. Ruston La. Hosp. Co.*, 932 F.3d 353, 356 (5th Cir. 2019), *as revised* (Aug. 1, 2019) (citing

*Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016)).

Second, if Fields establishes a prima facie case, the burden shifts to Walmart to articulate a legitimate, nondiscriminatory reason for the employment action taken against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Walmart's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West*, 330 F.3d at 385 (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

Third, if Walmart meets its production burden, Fields may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case); *see also Benitez v. Heartland Hotel Corp.*, 2011 WL 13228411, at *3 (N.D. Tex. June 14, 2011) (Furgeson, J.) (sex discrimination case). Fields does not rely in her response brief on the mixed-motives alternative. *See* P. Br. 21 (arguing that Fields has established that Walmart's asserted reason for terminating her was pretext for race discrimination). She relies on the pretext alternative, under which she must "offer sufficient evidence to create a genuine issue of material fact . . . that [Walmart's] reason is not true, but is instead a pretext for discrimination[.]" *Rachid*, 376 F.3d at 312 (citation and internal quotation marks omitted).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (alteration in original)

(quoting *Burdine*, 450 U.S. at 253).

V

Walmart assumes that Fields has established a prima facie case of race discrimination. *See* Ds. Br. 6-7 (assuming "[f]or summary judgment purposes . . . that [Fields] can establish a prima facie case"). The court will do so as well. The burden has therefore shifted to Walmart to articulate a legitimate, nondiscriminatory reason for terminating Fields's employment.

VI

Walmart has introduced evidence that Fields was discharged for "Gross Misconduct," i.e., poor job performance. Ds. App. 27. According to Hollje, and as reflected on Fields's exit-interview form, on the date in question, during a period when Fields was working in the self-checkout area, instead of monitoring customers, Fields was staring at the jewelry counter. During this period of inattentiveness, thieves using Fields's self-checkout lane scanned a $398.00 vacuum cleaner[5] for a price of $9.98 after switching the UPC barcode. All self-checkout hosts, including Fields, have been trained in cases when a customer switches a UPC code.

When the thieves departed the self-checkout area and headed for the exit, Fields did not stop them to check their receipt, despite her training. Because Fields was not paying

---

[5]Hollje's declaration and Fields's exit-interview paperwork differ on the value of the vacuum and the amount paid by the thieves. Fields relies on this difference to argue that it is one of the inconsistencies in the evidence that precludes summary judgment. The court will address this *infra* at § VII(D)(1).

attention, she was unable to confront the thieves, and Walmart suffered a loss exceeding $300. Before Fields was terminated, the store had developed a policy that, if an associate who had already been trained caused a loss of $300 or more, the associate's employment would be terminated. Fields was discharged because she had caused such a loss. Three other associates (including two Caucasians) have been terminated in the past for causing a loss exceeding $300.

Poor job performance is a legitimate, nondiscriminatory reason for terminating an employee. *See, e.g., Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991). The court therefore concludes that Walmart has satisfied its burden of producing evidence of a legitimate, nondiscriminatory reason for terminating Fields's employment.

## VII

### A

Because Walmart has met its production burden, Fields must now show that the legitimate, nondiscriminatory reason proffered by Walmart "[is] not its true reason[], but [was] a pretext for discrimination." *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253); see also *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). At the summary judgment stage, of course, Fields is only obligated to raise a genuine issue of material fact regarding pretext. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because [defendant] has satisfied its burden to produce a legitimate, nondiscriminatory reason for [plaintiff's] discharge, in order for [plaintiff] to survive summary judgment, [s]he must create a genuine and material fact issue

regarding the ultimate question of discrimination.").

B

Fields appears to oppose summary judgment based on arguments that can be grouped into three grounds: (1) she disputes Walmart's version of the facts, and her version—i.e., the thieves did not go through her area or switch the UPC barcode, and she was not staring at the jewelry counter and inattentive to customers in her self-checkout area—must be accepted as true at the summary judgment stage; (2) there are inconsistencies in Walmart's evidence, and Hollje perjured himself in his declaration; and (3) Julio (who is Hispanic) and Judy (who is Caucasian) engaged in very similar instances of misconduct regarding the vacuum theft, but neither was terminated.

C

1

Fields first challenges Walmart's evidence that she was inattentive and that this enabled the thieves to go through her self-checkout area, switch the UPC barcode, and carry out the theft. She relies on her own testimony denying that the thieves used her self-checkout area and establishing that the thieves could not have switched the barcode, as Hollje testified. Fields maintains that her testimony that the thieves never passed through her area must be taken as true; that there has been no video footage showing her staring at the jewelry counter and being inattentive to customers at the time of the theft; and that her exit interview states that she was not focusing on customers and was standing behind the pay station. Fields posits that the only disputed issue is whether the thieves were able to walk through her self-

- 11 -

checkout area while being watched by Julio (a department manager who already suspected them of shoplifting) and then scan the switched barcode and pay a fraction of the cost of a vacuum packaged in a large box; that at the summary judgment stage there are only her and Hollje's accounts as to what she was doing; and that, based on her testimony, which must be taken as true, not only was she speaking with a customer in her area at the time of the theft, but the thieves never even entered her area, which would have precluded her from checking their receipt.  Fields therefore contends that, viewed favorably to her, the summary judgment record reflects that she was carrying out her duties as a self-checkout host when she heard a person on the store speaker say that someone had a vacuum; she could not focus on this announcement because she was speaking with a customer; and the thieves (who never came through her area) were able to exit the store and steal the vacuum.

Walmart counters that merely disputing the facts that Walmart relied on in discharging Fields is insufficient to create a material fact issue regarding pretext: that Fields must present sufficient evidence to allow an inference that Walmart had a discriminatory motive.

2

"A plaintiff may establish pretext . . . by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action."  *Id.* (citing *Sandstad*, 309 F.3d at 899).  But "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."

*LeMaire v. La. Dep't. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (citing *Sandstad*, 309 F.3d at 899). This is because "[t]he existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Smith v. Hewlett-Packard Co.*, 512 F.Supp.2d 587, 595 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *Little*, 924 F.2d at 97). In other words, the pertinent inquiry is not how or "whether the incident happened," but whether it "was a 'real reason' for [the employee's] termination." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 235 (5th Cir. 2015) (citing *Sandstad*, 309 F.3d at 899). Accordingly, Fields's sworn denial of Walmart's version of the facts, and her testimony that the thieves did not go through her area and could not have switched the UPC barcode, and that she was not staring at the jewelry counter or inattentive to customers in her self-checkout area, are insufficient to create a genuine issue of material fact on the question of pretext.

Moreover, assuming that Fields's version of what occurred is correct and that Walmart's is incorrect, Fields's proof of pretext is still insufficient because "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little*, 924 F.2d at 97; *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) ("[An employer] is allowed to be incorrect in its assessment of the facts it relies on to justify firing [an employee]."); *Dickerson v. Metro. Dade Cty.*, 659 F.2d 574, 581 (5th Cir. Unit B Oct. 1981) (observing that even if employer was wrong in its evaluation of employee's absenteeism, it did not violate Title VII if it acted on reasonable

belief); *Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1298 (5th Cir. Unit A Mar. 1981) (recognizing that mistaken but good-faith belief that employee violated employer's rules was sufficient to rebut *McDonnell Douglas* inference that employee's discharge was for impermissible reasons); *Harris v. Dall. Cty. Hosp. Dist.*, 2016 WL 2914847, at *11 (N.D. Tex. May 19, 2016) (Fitzwater, J.) (citing cases). "[A] plaintiff must offer evidence to support an inference that the employer had a [discriminatory] motive, not just an incorrect belief." *Haverda v. Hays County*, 723 F.3d 586, 596 n.1 (5th Cir. 2013) (addressing retaliation). Pretextual motives cannot be proved "merely by disputing the truth of the underlying facts for that reason [because] [s]uch evidence, alone, merely implies that an employer may have made a mistake in deciding to take action against an employee," which, of course, it is entitled to do. *Id.* (citing *LeMaire*, 480 F.3d at 387); *see also Keller v. Coastal Bend Coll.*, 629 Fed. Appx. 596, 602 (5th Cir. 2015).

3

The court therefore holds that, even if Fields's evidence is taken as true—meaning that, in fact, the thieves did not go through her area or switch the UPC barcode, and that she was not staring at the jewelry counter and inattentive to customers in her self-checkout area—the evidence is insufficient to create a genuine issue of material fact concerning whether Walmart's stated reason for terminating her employment is pretextual.

D

1

The second group of arguments that Fields relies on are inconsistencies in Walmart's evidence and Hollje's perjury in his declaration. In support of this ground, Fields appears to rely on the following: the difference between what Hollje avers in his declaration was the amount the thieves paid for the vacuum ($9.98) and the value of the vacuum ($398.00) and what Walmart stated in the exit interview was the price paid ($10) and the value ($354.00); Fields's testimony that, after Julio became suspicious of the thieves at the back of the store, he followed them to the front of the store near Fields's area, where they walked right out of the front door, meaning that the thieves would not have had time to switch a UPC barcode or check out in Fields's self-checkout area, and, even if the customers did go through her area, that would mean that Julio stood idly by watching the customers in Fields's area but failed to alert her or anyone else about the customers' presence in her section; the facts that, if the thieves ignored Judy on exiting the store, it is reasonable to assume they would also have ignored Fields had she requested to check their receipt, that, for associate safety, no associate is allowed to detain a customer suspected of shoplifting, but Hollje insisted that Fields had the ability to stop the thieves and ask to see their receipt before they left the kiosk area, and Hollje contended that Judy and Julio could not have done the same thing, i.e., that it was too dangerous for Julio and Judy, but not for Fields; the fact that Hollje never disputed Fields's version of events, he stated that he understood that Fields believed Judy and Julio should have been terminated instead because they allowed the customers to walk out of the

store, and instead of stating that no other employees were involved or no other employees were aware of the customers' theft, Hollje instead stated that Judy and Julio were not allowed to detain customers suspected of shoplifting, thus failing to contradict Fields's testimony that the customers came from the back of the store, that a department manager who initially observed the customers suspected them of shoplifting, and that Judy knew about this before the customers exited; that there has been no video footage of Fields staring at the jewelry counter and not paying attention to customers at the time of the vacuum theft; and that Fields's exit interview states that she was not focusing on customers and was standing behind the pay station.[6]

2

Fields's arguments based on inconsistencies largely overlap with the first and third groups of argument. In several respects, she is offering reasons for disputing Walmart's version of what happened and for asserting that Judy and Julio should have been the ones terminated, not relying on actual inconsistencies in the evidence. To the extent that Fields's second group of arguments duplicates the other two groups, the arguments do not preclude summary judgment for the reasons the court explains when addressing the first and third grounds.

---

[6]It is possible to read Fields's brief as asserting that the difference in the date she maintains she was terminated (March 12, 2019) and the date Walmart states in the relevant paperwork (March 18, 2019) is among the inconsistencies that preclude summary judgment. Assuming Fields does rely on this inconsistency, it is likewise a minor one that does not preclude summary judgment, alone or in combination with other alleged inconsistencies.

What remains in the second group of arguments are inconsistencies in some of the factual details, such as the differences between what Hollje avers the thieves paid for the vacuum and the vacuum's value compared to what Walmart stated on the exit interview form. But such minor inconsistencies would not enable a reasonable trier of fact to find that Walmart's stated reason for terminating Fields's employment is a pretext for race discrimination. *See, e.g., Schell v. Companion Data Servs., LLC*, 2019 WL 4536175, at *9 (N.D. Tex. Sept. 19, 2019) (Fitzwater, J.) (holding that minor variations in reported statements and plaintiff's own denial, without more, were insufficient to raise genuine fact issue as to discriminatory intent).[7]

E

The third group of Fields's arguments is that Julio (who is Hispanic) and Judy (who is Caucasian) engaged in similar (if not more egregious) conduct, but were not terminated.

1

Fields maintains that Julio, who was in the Automotive Department, first noticed the customers with the vacuum cleaner, suspected them of theft, and followed them to the front of the store, but, by the time he arrived at the front, they had already exited with the vacuum. But before the customers exited, they had to pass by Judy, the door greeter, who was the last line of defense and responsible for checking customers' receipts. When Judy attempted to stop the customers, they ignored her and left the store. A very important duty of a greeter

---

[7]Moreover, the loss would exceed $300 under either scenario, thus satisfying the threshold that Walmart maintains would have resulted in termination of a trained employee.

is to check all receipts of anything not in a bag (mostly large items), including the receipt for a vacuum cleaner.

Fields maintains that the thieves had to pass three employees: Julio, Fields, and Judy; that, according to Fields's testimony (which must be taken as true), the thieves never passed through her area at all; and that both Julio and Judy could have intervened to ask for the customers' receipt. She posits that Judy had a greater responsibility based on her job description, which included checking customers' receipts just before the customers exited the store, and that Julio did not ask the customers to see their receipt and Judy attempted to stop the customers, but they ignored her demands.

Fields contends that Judy and Julio are still employed by Walmart even though they committed very similar instances of misconduct, and, in the case of Julio, much more grievous conduct since he is a department manager. Although these comparators' misconduct was equal to and/or more severe than Fields's, Walmart did not terminate the Caucasian and Hispanic comparators for their wrongdoing.

Fields asserts that Hollje was racist towards her because she was the only one who was terminated and she previously felt uncomfortable around him because he was always watching her and he did not do the same to other employees.

Walmart maintains in reply that Julio's and Judy's conduct is not comparable to Fields's alleged conduct because, according to Fields's own theory, Julio and Judy did what they were supposed to do to help prevent store shrink: Julio made the store aware of the possible theft, and Judy asked to see the customer's receipts. By contrast, Walmart believed

that Fields had done nothing at all to prevent company shrink: due to her inattention to customers at the kiosk, she failed to fulfill her job duties by stopping customers and asking to see their receipts to make sure the scanned items matched their purchases.

2

Disparate treatment of nearly identical employees can raise an inference that an employer's proffered explanation was pretext for race discrimination. *See, e.g., Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). "[F]or a plaintiff to show disparate treatment, she must demonstrate 'that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained." *Wallace*, 271 F.3d at 221 (first alteration not in original) (quoting *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam)). "[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Id.* (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000)).

Fields has not created a material fact issue on the question of pretext. Even viewing the evidence in the light most favorable to Fields, a reasonable jury could not find that the alleged conduct for which Walmart terminated her "was nearly identical to that engaged in by" Julio or Judy. *See id.* (quoting *Smith*, 891 F.2d at 1180). Walmart has introduced evidence that it terminated Fields for "Gross Misconduct"—that her inattention to the customers in her self-checkout lane resulted in a loss exceeding $300 to the store. Ds. App.

25, 27. By Fields's own testimony, neither Julio nor Judy was alleged to have been inattentive to the customers involved in the theft. According to Fields's own testimony, Julio, suspecting the customers of shoplifting, followed them to the front of the store. And Judy *did* attempt to stop the customers at the exit to check their receipt, but they simply ignored her and departed the store with the vacuum. There is a significant difference between Fields's alleged misconduct and that of Julio and Judy that "accounts for the difference in treatment received from the employer." *See id.* (citing *Wyvill*, 212 F.3d at 304-05). In Walmart's view (and it is entitled to be mistaken and still not have engaged in race discrimination), Julio and Judy were attentive but unsuccessful, whereas Fields was inattentive and derelict. The court therefore concludes that the conduct at issue is not nearly identical and that Fields's disparate treatment argument is insufficient to overcome summary judgment.

## F

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148; *see also St. Mary's Honor Ctr.*, 509 U.S. at 511 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."). There may be instances, however, in which this showing is not sufficient to establish pretext, such as when a plaintiff has only created a weak fact issue as to the falsity of the employer's reason

and there is abundant evidence that no discrimination occurred.  *See Reeves*, 530 U.S. at 148.

This is such a case where, at most, there is a weak fact issue and abundant evidence that no

discrimination occurred.

Fields worked successfully at Store No. 789 in Mesquite, Texas for almost 16½ years,

from 2002 to 2019.  Throughout her long tenure with Walmart at that store, she never felt

discriminated against because of her African-American race; she never reported to anyone

at Walmart that she ever felt discriminated against because of her race; she never received

coaching that she thought was discriminatory based on her race; no Walmart manager ever

used racial slurs toward her; and she never felt that she was denied a raise because of her

race.  The only evidence in the summary judgment record that is in any way related to

alleged disparate treatment of Fields based on her African-America race is one single

incident: the theft incident in question, in which Fields was terminated but Julio and Judy

were not.

Although Fields now maintains that Hollje discriminated against her based on her

race, her testimony, even accepted as true, would not enable a reasonable trier of fact to find

that Walmart's stated reason for terminating her is pretextual.  According to Fields, Hollje

exhibited racism by the way he would pass through and look at her station, and engage in

similar conduct.  But when asked at her deposition what made her think he was looking at

her that way because of her race, she responded: "Well, it was – you know, I felt that he was,

you know.  In my opinion I believe he was racist towards me, you know." Ds. App. 20.  And

when asked what made her feel that way, Fields answered: "It just he looking.  Always

watching me. It would make anyone feel uncomfortable. Especially when you're at work and you're doing your job, you know." *Id*. But Fields's subjective belief that she was discriminated against is insufficient to meet her summary judgment burden. *See, e.g., DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 492 (5th Cir. 2018) (holding that "[plaintiff] cannot establish pretext solely by relying on her subjective belief that unlawful conduct occurred").

Moreover, Hollje is the very same Walmart manager who asked Fields to become a self-checkout host. A reasonable trier of fact would therefore have to find that, despite working at the same Walmart store for more than 16½ years without apparently being the victim of *any* racial discrimination, Fields was discharged based on her race, and the same manager who had asked her to become a self-checkout host (and must have known when he did that she was African-American) had a role in terminating her based on her race.

## G

"The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is . . . correct.'" *Reeves*, 530 U.S. at 146-47 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524). "In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id.* at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519).

Because Fields has failed to raise a genuine issue of material fact concerning whether Walmart's asserted reason for terminating her is pretextual, the court grants summary

judgment dismissing her Title VII claim.[8]

*   *   *

For the reasons explained, the court grants Walmart's motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

April 30, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[8]Fields maintains that Walmart cannot rely on her history of having receiving a single infraction as a basis to terminate her.  Because Walmart does not rely on this ground to support its motion, the court need not address this issue.